## Levi's Estate

*Ambler Williams, Charles L. Smyth,* and *William W. Metzinger,* for exceptant.

*Thomas Hallman* and *Jacob K. Miller,* for accountant.

HOLLAND, P. J., February 26, 1940.—Morris Rosenbaum, whose claim as a creditor was presented at the audit of the account and dismissed by the adjudication, has excepted. The claim was thus dismissed, upon claimant's offer of proof, because the question was deemed res adjudicata. It is again urged that the proceedings in the Court of Common Pleas No. 1 of Philadelphia County, in equity, are not conclusive. The adjudication did not go behind the apparent finality of the decree entered by that court in dismissing claimant's bill in equity, and rested on the lack of jurisdiction of this court to decide a question which that court had jurisdiction to decide, did decide, and was not appealed.

On reconsideration and on further inquiry we remain unconvinced of error in so holding. Claimant's chief contention rests on the supposed want of authority of the Court of Common Pleas of Philadelphia County, under

the Pennsylvania Rules of Equity Practice, to dismiss claimant's bill on preliminary objections. Equity Rule 48 provides for preliminary objections to a bill in equity, and enumerates seven specific reasons, any one or more of which may be assigned. Rule 49 provides for the procedure where preliminary objections have been filed. Plaintiff may amend, as of course, to cure the objections; defendant may, after the time for amendment has passed, "order the case upon the argument list for hearing." In this event, "the Court shall either dismiss the objections . . . or sustain them, in whole or in part, and require the plaintiff to amend accordingly . . .". For the court to have dismissed the bill amounts, in claimant's view, to a "disregard" of Equity Rule 49.

This contention does not appear sound for the following reasons. The purpose of Rule 49 has been explained in Gray v. Philadelphia & Reading Coal & Iron Co. et al., 286 Pa. 11, 14 (1926):

"The course of procedure thus provided for,—which prevents the ancient injustice of at once dismissing an action for a failure to plead properly,—was deliberately adopted to comport with the provisions of the Practice Act of May 14, 1915, P. L. 483, which requires that, in determining whether or not a summary judgment should be entered, 'the question to be decided . . . is not whether the statement is so clear, in both form and specification, as to entitle plaintiff, without amendment, to proceed to trial, *but whether, upon the facts averred, it shows, as a "question of law,"* that plaintiff is not entitled to recover': [citing cases] Equity Rules 48 and 49 must be construed in the same way . . . " (italics supplied).

While in the case cited the lower court was reversed for having dismissed plaintiff's bill on preliminary objections, namely, insufficient averments of facts, those defects could have been cured by amendment. Yet the quotation recognizes an alternative, namely, where the bill shows as a question of law that plaintiff is not entitled to recover. That is a defect which no amendment

can cure, and in such cases a summary judgment is sanctioned.

Clearly claimant's bill in the Court of Common Pleas of Philadelphia County is of the alternative variety. The record shows that it was actually twice amended: First on the fourth day after the original bill was filed and before defendants could take any action; and again after defendants' preliminary objections raising "inexcusable laches" were filed. The same objections were made to the second amended bill. In three attempts claimant was unable to set forth a cause of action not open to this objection; nor has claimant since he has been in this court, either in his offer of proof at the audit, or in the course of two arguments of the question, advanced anything which might conceivably excuse his delay. One is at a complete loss to picture just how a litigant with a claim which, whatever its merits, is too stale for recovery, can by the simple process of amendment freshen it up so as to render it unobjectionable on that ground. No method has as yet been discovered to recapture lost time, and what short of moving back the calendar could avail claimant, remains undisclosed and undiscernible.

To construe Equity Rule 49 as requiring in all events an opportunity for plaintiff to amend, before a bill may be dismissed on preliminary objections, involves rejecting both the reason for the rule and what the Supreme Court has said and done under it in a number of cases. First National Bank of Pittston, Exec., et al. v. Lytle Coal Co. et al., 332 Pa. 394 (1938), is unusually similar to this case. A bill in equity, inter alia for an accounting, was met with preliminary objections on the grounds of laches. Plaintiffs amended and the objections were renewed. A hearing was had—presumably on the argument list, as provided by Equity Rule 49—and the Court of Common Pleas of Luzerne County sustained the objections and dismissed the bill. On appeal, this action was affirmed. In accord, are Barnes & Tucker Co. v. Bird Coal Co., 334 Pa. 324 (1939), and McKessen et al. v.

Doyle et al., 312 Pa. 591 (1933). Each case emphasized a fact which is common to the instant case as well, namely, that the person most interested and acquainted with the facts was already dead.

These cases negative claimant's contention that the Court of Common Pleas of Philadelphia County "disregarded" the Equity Rules, that it had no authority to dismiss the bill on preliminary objections, and that its decree is not a final decree. Although none of the cases cited actually discusses the questions claimant raises here, the fact remains that in all three cases the courts involved did exactly what the common pleas court did in this case. It is incomprehensible that the Supreme Court would have affirmed in each if the procedure were as fundamentally faulty and unwarranted as claimant contends; or that appeals would have been entertained and acted upon, if the decrees of the lower courts had been less than final.

On the point of res adjudicata, claimant's argument assumes that the common pleas court's decree is exactly analogous in effect to a nonsuit. In support, he cites Scharf v. Richard De Cou Co., 320 Pa. 552 (1936), where a plaintiff in trespass was nonsuited for failure to appeal when the case was called for trial, and his subsequent motion to take off the nonsuit was refused. When plaintiff began a new action, a rule for judgment for defendant was made absolute on grounds that the matter was res adjudicata. Reversal by the Supreme Court was based on the complete absence of (p. 553) "any sort of trial or hearing on the merits of plaintiff's case." Apparently it was argued that the case was within the Act of March 11, 1875, P. L. 6, which provides for the entry of a nonsuit by the trial judge where the plaintiff has given insufficient evidence, and for removal of the record by plaintiff to the Supreme Court, on refusal by the court in banc to set aside the nonsuit, " 'with like effect as he might remove a judgment rendered against him upon a demurrer to evidence.' " This act was held not pertinent

because (p. 555) "it contemplates only a case where plaintiff has offered or has had full opportunity to offer evidence in support of his claim." In the present case claimant is in quite a different position from the plaintiff in the above case, in that he did have a hearing, pursuant to which the court decided that no amount of evidence he might offer would overcome the fatal delay. That hearing did involve the "merits" of claimant's case in the sense that its substance, its intrinsic justice, was at stake —not merely the form of his pleadings, or some other technical question of practice or procedure.

In another case cited by claimant, Fine v. Soifer, 288 Pa. 164 (1927), attention is drawn to the similarity of practice under the Act of 1875, supra, and Equity Rule 66. The latter expressly provides that the decree of dismissal of a plaintiff's bill at the close of his evidence, when that fails to sustain the averments, "shall have the effect of a nonsuit at law"; but that on dismissal of exceptions to such a decree "it shall become a final decree for all purposes, and subject to appeal . . .". It is clearly untenable to argue that when a decree under Rule 66 has thus become final the nonsuit analogy theretofore prevailing still holds. Meanwhile the court in banc has acted, as distinguished from the hearing judge or referee; and the rule describes it as "final", as distinguished from having "the effect of a nonsuit". Equity Rule 49, with which this case is concerned, significantly does *not* use the nonsuit analogy. While it does not expressly say that a decree of dismissal shall be final, it does contemplate that the action be by the *court in banc* on the argument list, and we have seen that the decree of dismissal must be final else it could not have been subject to appeal in the cases above cited. Sauber v. Nouskajian et ux., 286 Pa. 449 (1926), also relied upon, likewise arose under Equity Rule 66, and is plainly distinguishable because squarely within the nonsuit provisions of that rule. Smith v. Overseers of Public Schools, etc., et al., 104 Pa. Superior Ct. 111 (1931), did arise under Rules 48 and 49, and although

dismissal of the bill on preliminary objections without giving plaintiff an opportunity to amend was held error, the objections there were all to the form of the bill and impertinent and irrelevant matters contained in it. The nature of the defects was such that they could have been cured by amendment.

This court is still of the opinion that the question claimant seeks to raise is res adjudicata. The Court of Common Pleas No. 1 of Philadelphia County had jurisdiction over the parties and the subject matter; it had jurisdiction to and did enter a final decree which constitutes a bar to inquiry into the same controversy here.

And now, February 26, 1940, the exception of Morris Rosenbaum is dismissed.